UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW MULLENBACH,<br><br>     Plaintiff,<br><br>  v.<br><br>BRAD GARDNER, individually and in his official capacity as a probation officer and employee of the Idaho Department of Correction; BRENT REINKE, individually and in his official capacity as Director of the Idaho Department of Correction, and Does I through X, as probation officers and/or employees of the Idaho Department of Corrections, Probation and Parole,<br><br>     Defendants. | Case No. 4:10-cv-00418-EJL-MHW<br><br>**REPORT AND RECOMMENDATION** |

    Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 15). On October 21, 2010, this case was referred to the undersigned for all pretrial motions. *Scheduling Order*, Dkt. 8. Having reviewed Defendants' Motion, Memorandum and supporting documentation, Plaintiff's Response (Dkt. 19), and Defendants' Reply (Dkt. 21), the Court finds that the decisional process would not be aided by oral argument, and it will resolve the motion on the written submissions. D. Idaho L. Civ. R. 7.1(d).

## BACKGROUND

Plaintiff was arrested on June 3, 2002, and charged with two felony counts of Issuing No Account Checks. *Aff. of Michael Elia ("Elia Aff."), Ex. 1 at 7-8*, Dkt. 15-2. On February 25, 2003, Plaintiff pleaded guilty to those charges in exchange for the dismissal of a drug related charge and a probation violation. On April 29, 2003, he was granted a withheld judgment and ordered to serve felony probation for a term of three (3) years. *Elia Aff., Exs.2 and 4* and *Affidavit of Brad Gardner ("Gardner Aff.") at 2*, Dkt. 15-14. Plaintiff was advised in the Order of Probation that he would be under the legal custody and control of the Director of Probation and Parole of the State of Idaho and subject to the rules of probation. *Elia Aff., Ex. 2 at 2.* The Conditions of Probation attached to the Order of Probation included an instruction that "probation shall not be terminated until the Court has both reviewed the performance of the probation (sic) and *has signed an order discharging the probation*." *Id.* at 3 (emphasis added). It also included an instruction that a probationer "shall submit to a search of his person, residence or vehicle, at the request of any agent of probation and parole, *without a search warrant*." *Id*. (emphasis added).

Plaintiff also signed a Community Corrections Agreement of Supervision under which he agreed and consented to the search of his "person, automobile, real property, and any other property at any time and at any place by an Agent of the Division of Community Corrections and to waive [his] constitutional right to be free from such searches." *Elia Aff., Ex. 3*, Dkt. 15-6.

On May 20, 2004, Plaintiff was arrested and charged with two counts of Possession of a Controlled Substance and Possession of Drug Paraphernalia with the Intent to Use. *Elia Aff., Ex. 4*, Dkt. 15-7. He pleaded guilty to those charges, and on July 1, 2004, he was sentenced to two years of probation. *Elia Aff., Ex. 1 at 5.* These charges also formed the basis for revoking his withheld judgment. On July 2, 2004, Judge Brent Moss resentenced Plaintiff to a term of five years probation under the same terms and conditions as the original sentence, including the warrantless search condition and thecondition that Plaintiff not use or possess any controlled substances. *Elia Aff., Exs. 3 and 5*.

Idaho law limits the duration of probation as follows:

> The period of probation or suspension of sentence may be indeterminate or may be fixed by the court, and may at any time be extended or terminated by the court. *Such period with any extension thereof shall not exceed the maximum period for which the Defendant might have been imprisoned*.

Idaho Code § 20-222 (emphasis added).

The statute under which Plaintiff was convicted provides for "imprisonment in the state prison for a term not to exceed three (3) years." *Idaho Code § 18-3106*. Therefore, the maximum sentence of probation that could be imposed on revocation was three years.

Plaintiff was represented by counsel at the July 2, 2004 revocation hearing. *Elia Aff., Ex. 9 at 15.* Judge Moss imposed five years of probation. Counsel did not raise the issue either at sentencing or at any time post-conviction that Plaintiff could not be sentenced to probation for a term longer than three years. *Id.*

**REPORT AND RECOMMENDATION - 3**

When an offender is placed on probation, the Community Corrections Division of the Idaho Department of Corrections receives the offender's file containing relevant information including the court's sentencing order. *Gardner Aff. at 2*. The sentencing date and the length of the term of probation are entered into a database and a central file. *Id*. The probation officers refer to the database for the offender's probation information which includes the reason for probation, the term of probation, and the release date. *Id*.

Plaintiff was initially supervised by Probation Officer Monte Conyers. *Id*. Defendant Brad Gardner assumed supervision of Plaintiff in April of 2006 having had no prior knowledge of Plaintiff's criminal history or probationary status. *Id*. At no time did Idaho Department of Corrections ("IDOC") Director Brad Reinke have any personal participation in or personal knowledge of Plaintiff's probationary supervision. *Id. at 6*.

On September 8, 2006, after Plaintiff had been on probation for over two years, Officer Gardner went to Plaintiff's home for a routine probation visit. *Gardner Aff. at 2*. Plaintiff disputes that the visit was a routine visit. *Plaintiff's Statement of Facts in Opposition ("Facts in Opp'n")* ¶ 9, Dkt. 20. However, as discussed below, the Court does not find the factual dispute to be material. Regardless of the reason for the visit, Plaintiff initially did not answer the door despite repeated knockings. *Gardner Aff. at 2*. Officer Gardner called the Teton County Sheriff's Office for assistance. *Id*. When Plaintiff eventually opened the door, he admitted he had beer in the refrigerator and would fail a drug test for marijuana (THC). *Id.* The officers subsequently found evidence of marijuana, several bottles of beer, and a bottle of whiskey in the freezer. *Id*.

*at 3.*  Plaintiff admitted that he had recently used THC and cocaine.  *Id.*

After being taken to the Sheriff's Office, Plaintiff was given the opportunity to act as a confidential informant rather than serve time in jail for the probation violation.  *Id. at 3-4.*  Plaintiff contends that Officer Gardner threatened to incarcerate him and have additional charges filed against him unless he acted as a confidential informant.  *Facts in Opp'n* ¶ 9.  Nonetheless, Plaintiff agreed to serve as a confidential informant.  *Gardner Aff. at 3-4.*  His services on behalf of the Teton County Sheriff's Office led to the arrest and conviction of Tyson Liberty Hempel for distribution of illegal substances.  *Id.*  Whether Plaintiff was given the option to avoid jail time or felt coerced is not relevant to consideration of his claim regarding the alleged disclosure of his identity as a confidential informant.

When Presentence Investigator Brenda Hammon met with Mr. Hempel prior to his sentencing in May of 2007, he informed her that Plaintiff was the confidential informant involved in the investigation which led to his arrest.  *Affidavit of Brenda Hammon* ("*Hammon Aff.*") *at 2*, Dkt. 15-17.  Mr. Hempel was sentenced to a term of probation.  *Gardner Aff. at 4.*  Officer Gardner subsequently met with him to complete interstate compact transfer paperwork.  *Id.*  During that meeting, Mr. Hempel informed Officer Gardener that Plaintiff was the confidential informant whose involvement led to his arrest and conviction.  *Id.*  Officer Gardner did not confirm that statement.  *Id.*  At no time did Mr. Hempel directly threaten Plaintiff after his arrest or conviction.  *Elia Aff., Ex. 9 at 45 (Mullenbach Deposition).*  However, Plaintiff was concerned for his safety because he

had heard from others about "possible threats" against him. *Id*.

On July 26, 2007, more than three years after imposition of sentence, Officer Gardner observed Plaintiff with a cup of beer in his hand watching a concert in the downtown area of Driggs, Idaho. *Gardner Aff. at 4*. Plaintiff admitted that he had been drinking, and the admission was confirmed by a breathalyzer test taken at the nearby Sheriff's Office. *Id. at 4-5*. A urinalysis taken at the same time indicated the use of THC. *Id*. A subsequent search of Plaintiff's residence revealed a backpack with 15 grams of marijuana. *Id*. On January 14, 2008, he pleaded guilty to Possession of Drug Paraphernalia in return for dismissal of a charge of Possession of a Controlled Substance. *Id. at 5*. He was sentenced to two years of probation. *Id*.

On March 14, 2008,[1] Officer Gardner went to Plaintiff's residence for a routine supervision check. *Id*. As with the September 8, 2006 visit, lights and television were on in Plaintiff's home, but no one answered the door despite Officer Gardner's calls to his cell phone and home phone. *Gardner Aff. at 5*. Officer Gardner waited until he could see through the uncovered kitchen window that Defendant was in the home. *Id*.

After Gardner announced his presence, Plaintiff opened the door and allowed Gardner to enter. *Id*. Officer Gardner was later joined by local law enforcement whom he had called to assist with a search of the residence. *Id*. Plaintiff stated that he would test positive for marijuana if tested, and he signed a voluntary admission to having used

---

[1] Officer Gardner's Affidavit uses a date of May 15, 2008. From the context of the pleadings, briefing, and statements of fact, the Court believes that the date is in error and should be March 14, 2008.

THC.  *Id.*   The subsequent search of the residence yielded empty beer bottles, a pot pipe, a bottle of Jagermeister liquor, six full beer bottles in the garage, and a .357 magnum revolver.  *Id.*  Plaintiff was arrested by a Teton County Sheriff's Deputy for unlawful possession of a firearm by a convicted felon and possession of drug paraphernalia with intent to use.  *Facts in Opp'n. at 6.*  Officer Gardner followed the Deputies to the Sheriff's office and signed an agent's warrant charging Plaintiff with a probation violation based on the admissions and the search.  *Id.  See also Elia Aff., Ex. 6 at 2.*

The charge of unlawful possession of a firearm by a convicted felon was dismissed on motion of the prosecutor on March 24, 2008.  *Elia Aff. Ex. 1 at 1.*  It appears that the charge of possession of drug paraphernalia was likewise dismissed.  *Id.* Plaintiff pleaded guilty to the probation violation on June 10, 2008.  *Id. at 10.*   On August 19, 2008, at the time set for sentencing, Judge Shindurling dismissed the probation violation and ordered that Plaintiff be discharged from probation pursuant to Idaho Code § 20-222 which, as mentioned above, sets the maximum allowable probationary sentence.  *Id.,* Ex. 8.

Officer Gardner did not know before the August 19, 2008 hearing that Plaintiff's term of probation was longer than allowed by Idaho law.  *Gardner Aff. at 6.*  He never discussed Plaintiff's criminal history and probationary status with Director Reinke and does not believe that Director Reinke was aware of this case prior to Plaintiff's filing of the Complaint.  *Id.*

Plaintiff filed the within action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging

**REPORT AND RECOMMENDATION - 7**

that Defendants Brad Gardner and Brent Reinke, in their individual and official capacities, violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights by engaging in an illegal search and seizure of his property on March 14, 2008, arresting him, and continuing to prosecute him after his probationary term expired; by inflicting cruel and unusual punishment by placing him in imminent danger of harm when identifying him as a confidential informant; and by discriminating against him by arresting, searching, and detaining him.

In his prayer for relief, Plaintiff seeks declarations that Defendants violated his rights under the Fourth, Fifth, and Eighth Amendments and his rights to equal protection under the Fourteenth Amendment. *Compl. at 7.* He also seeks a declaration that Defendants developed and maintained practices, policies and/or customs exhibiting deliberate indifference to the constitutional rights of Idaho State probationers which caused violations of his rights. *Id.* Finally, he seeks compensatory and punitive damages and attorney fees. *Id.* He does not seek injunctive relief.

The parties agree that imposition of a sentence of five years of probation was in violation of Idaho Code § 18-3106(a) and that three years was the maximum term that could have been imposed. They differ on when the term of probation would have commenced which necessarily means they differ as to when the maximum legal term of probation would have ended. However, as discussed below, those dates are not determinative of any of the issues before the Court.

# LEGAL STANDARDS

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or depositions excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

**REPORT AND RECOMMENDATION - 9**

The burden then shifts to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show by its "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege four elements: "(1) a violation of rights protected by the Constitution, or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

## DISCUSSION

Defendants advance the following arguments in support of their Motion for Summary Judgment: (1) that the Idaho Department of Corrections is not a proper party; (2) that Director Reinke should be dismissed from this suit for lack of personal participation; (3) that all Defendants should be dismissed as to their official capacity; and (4) that the remaining Defendants have qualified immunity in their individual capacities. The Court will address each argument in turn.

## 1.    Idaho Department of Corrections

Defendants contend that IDOC should be dismissed either because it is not a party

or because it has not been served pursuant to Idaho R. Civ. P. 4(a).

The caption of the Complaint does not list IDOC as a Defendant, and there are no allegations against IDOC in the Complaint. *Compl*., Dkt. 1. However, IDOC is listed as a party in the body of the Complaint. *Compl*. ¶ 5. IDOC has not been served. In his Response, Plaintiff does not attempt to clarify his intentions with regard to IDOC or rebut Defendants' argument. However, even if the claim is not waived, it is subject to dismissal.

The Eleventh Amendment prohibits litigants from bringing suit against states and state entities in federal court. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993). The "Eleventh Amendment's jurisdictional bar applies 'regardless of the nature of the relief sought.'" *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Accordingly, "the Eleventh Amendment immunity that [state entities] may claim as dependent instrumentalities of [the state] shields them from claims for both monetary and non-monetary relief." *Rounds v. Oregon State Bd. of Higher Education*, 166 F.3d 1032, 1036 (9th Cir. 1999). Neither a state nor an "arm of the state" is a "person" within the meaning of § 1983. *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993).

When determining whether a government agency is an arm of the state, the court should consult state law and examine various factors. *Id*. at 1399. The most important of those factors is whether a judgment against the entity would have to be satisfied out of the entity's resources or the state treasury. *Durning v. Citibank, N.A.*, 950 F.2d 1419,

1424 (9th Cir. 1991).  Finding that a judgment against IDOC would be paid out of the state treasury, the Ninth Circuit has previously specifically held that IDOC is an arm of the State of Idaho and therefore immune from suit.  *See Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1988) (finding IDOC to be an executive department of the state government under the Idaho Constitution); *see also* Idaho Code § 20-201(2011).  Accordingly, the Complaint is subject to dismissal as to IDOC to the extent that IDOC was intended to be a party.

## 2.     IDOC Director Brent Reinke

Defendants contend that Director Reinke should be dismissed because there is no evidence in the record that he personally participated in Plaintiff's sentencing or probationary supervision in any capacity, that he directed the alleged violations, or that he knew of them and failed to act.  Significantly, in his Response, Plaintiff did not attempt to refute the argument that Director Reinke should be dismissed or submit any evidence indicative of personal participation.

A state official may be held individually liable for actions  or omissions in his or her individual capacity only if he or she is personally involved in the act or omission which caused the injury.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Stated another way, a state official may have individual liability for depriving a plaintiff of a constitutional right if the state official is personally involved in performing an affirmative act, participating in another's affirmative act, or omitting to perform an act which that person is legally required to perform.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.

1978).

There is no respondeat superior liability under § 1983. *Taylor*, 880 F.2d at 1045. However, a supervisor may be held liable for the constitutional violations of subordinates if the supervisor "directed the violations, or knew of the violations and failed to act to prevent them." *Id.* A supervisor may also be held liable if the plaintiff shows that the official "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (internal citation omitted).

Plaintiff has not even alleged, much less shown, that Director Reinke personally participated in Plaintiff's supervision or had personal knowledge of the alleged constitutional violations. However, he has alleged that Officer Gardner's conduct "is part of a pattern and practice of actions by IDOC and its probation officers that result in probationer's term being illegally enforced and probationer's residences being searched and property seized illegally." *Compl.* ¶ 20. He also alleged *"[u]pon information and belief*, the practices discussed above have existed for years and the Defendants knew or should have known of these practices." *Id.* ¶ 21 (emphasis added). Plaintiff has not submitted any evidence to support this claim.

Plaintiff cannot rely on the allegations of his Complaint to create a genuine issue of fact. Rather, to do so, he must present affidavits, depositions, admissions, or the like. *Celotex Corp.*, 477 U.S. at 323-24. *See also Taylor*, 880 F.2d at 1045 (affirming summary judgment in favor of a lieutenant in charge of a maximum security unit given

**REPORT AND RECOMMENDATION - 13**

the plaintiff's failure to provide affidavits or other evidence supporting his allegations).[2]

Plaintiff testified in his deposition that a probationer by the name of "Ray" told him that his attorney had gotten him released on the grounds that Ray had been kept on probation over the time allowed by law. *Mullenbach Dep. at 47-48*. However, that testimony is essentially on information and belief and is not sufficient to defeat summary judgment on this issue. *Taylor*, 880 F.2d at 1046 n.3. Plaintiff has submitted no evidence substantiating his claim. Accordingly, the Complaint against Director Reinke is subject to dismissal.

### 3.      Claims Against Defendants in their Official Capacities

Defendants next urge the dismissal of all claims against them (including presumably the "Doe" defendants) in their official capacities because state employees are not "persons" for § 1983 purposes. Defendants correctly state the law.

States and state actors are not considered 'persons' under the provisions of §1983. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Suits against state actors "acting in their official capacities" are actually suits against the state, and are barred by the Eleventh

---

[2] In *Taylor*, the court noted that the plaintiff had submitted an affidavit stating that the affiant "was informed and believed" that the lieutenant was involved in the constitutional deprivation. However, the court found that the statement did not raise a triable issue regarding the lieutenant's involvement because "[t]o raise such an issue, the statement would have to be made on personal knowledge, not information and belief." *Taylor*, 880 F.2d at 1046 n.3. Therefore, Plaintiff's allegations on information and belief in the Complaint would fail even if in affidavit form.

Amendment.[3]  *Id.*  In his or her official capacity, a state actor is not a "person" because an official "assume[s] the identity of the government that employs them."  *Id.* at 27. Therefore, when a plaintiff is seeking damages against a state official, the court construes the complaint as an individual capacity suit because an official capacity suit for damages would be barred.  *See Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994).

Based on the above, it is abundantly clear that all causes of action against all Defendants in their official capacities are subject to dismissal.

**4.      Individual Capacities and Qualified Immunity.**

Defendants next contend that the individual capacity causes of action should be dismissed on the ground of qualified immunity.

Individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "A victory in such a suit is a 'victory against the individual defendant, rather than against the entity that employs him,'" and  "[t]hus, the Eleventh Amendment prohibition against monetary damages imposed on a state does not apply. . . ."  *Cerrato*, 26 F.3d at 973.  However, the official is entitled to qualified immunity from suits in his individual capacity in certain circumstances.

---

[3] The Eleventh Amendment does not bar suits for prospective injunctive relief filed against state officials.  *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908).  Plaintiff is not requesting injunctive relief.

Where government officials engage in conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," they are immune from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" with its objective standard "that leaves 'ample room for mistaken judgments' by officials who must often make close decisions in difficult situations." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (citations omitted).

The Supreme Court established a procedure to be used in determining whether an official is protected by qualified immunity. *See Saucier v. Katz*, 533 U.S. 194 (2001). *Saucier* directed courts, looking at the facts in a light most favorable to the plaintiff, to first determine whether the conduct violated a constitutional right and, if so, only then determine whether that right was "clearly established" at the time of the conduct. *Id*. at 201. "Clearly established" means that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. "The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1075 (9th Cir. 2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).

More recently, the Supreme Court has retreated from the mandatory inquiry to an inquiry permitting the district court to decide which of the two prongs of the analysis

should be addressed first depending on the circumstances in any given case.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818-19 (2009).  If it is easier resolve the second prong of the analysis first, it is now within the court's discretion to do so.  *Id.*

## A.    Fourth Amendment Claim

In his Complaint, Plaintiff alleged that his Fourth Amendment rights were violated during the March 14, 2008 search.  However, in his Response, he raises constitutional violations regarding the July 26, 2007 search as well.

Defendants contend that Plaintiff's Fourth Amendment rights were not violated during the March 2008 search because Plaintiff was subject to a search condition, and Officer Gardner engaged in the search based on a reasonable suspicion that Plaintiff was engaged in criminal activity based on Plaintiff's admission that he would test positive for marijuana use.  With regard to the July 2007 search, Defendants contend that Officer Gardner had actual knowledge that a probation violation had occurred prior to conducting the search because he had seen Plaintiff drinking a beer, and then Plaintiff tested positive for marijuana use.  It is noteworthy, that Plaintiff does not contest any of the facts leading up to or transpiring at either search.  The Court finds that Plaintiff has met neither of the two *Saucier* prongs.

### (1)    Constitutional Requirements for Search

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not

be violated." *U.S. Const., Amendment 4*. In determining whether a search is reasonable based on the totality of the circumstances, courts must balance the intrusion upon an individual's privacy with promotion of legitimate governmental interests. *United States v. Knights*, 534 U.S. 112, 118-19 (2001). In making the reasonableness assessment, it is important to consider a probationer's lesser expectation of privacy. "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id*. at 119 (internal quotations and citations omitted).

A court "may impose reasonable conditions [such as a search condition] that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id*. A search condition both promotes rehabilitation and protects society. *Id*. When a search condition is clearly expressed in the probation order and the probationer is clearly informed of it, his reasonable expectation of privacy is considerably diminished. *Id.* at 119-20.

On the other hand, given that probationers are more likely to engage in and attempt to conceal criminal activity than the average citizen, the government has a strong interest in imposing a search condition. *Id*. at 120. Balancing those competing considerations, the Supreme Court held that the Fourth Amendment "requires no more than reasonable suspicion to conduct a search of [a] probationer's house" if he is subject to a search condition. *Id*. at 121. "The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest

reasonable." *Id*. A probable cause standard need not be met. *Id*. Nor is a warrant

required when a reasonable suspicion is coupled with a search condition. *Id*.

*Knights* left open the question of whether a probationer's expectation of privacy is

so diminished that a search is permissible without any particularized suspicion. *See*

*Knights*, 534 U.S. at 120 n.6. However, a few years later, the Supreme Court upheld a

warrantless search of a *parolee* based solely on his status. *See Samson v. California*, 547

U.S. 843, 857 (2006). The Court recognized that *parolees* have even fewer expectations

of privacy than *probationers* given that "parole is more akin to imprisonment than

probation is to imprisonment." *Id*. at 850 (emphasis added).

The Supreme Court has still not addressed whether a warrantless search of a

*probationer* without a reasonable suspicion is constitutionally permissible. However,

after *Knights* but before *Samson*, the Ninth Circuit noted that it had "consistently

recognized that there is no constitutional difference between probation and parole" for

Fourth Amendment purposes. *See Motley v. Parks*, 432 F.3d 1072, 1080 n.9 (9th Cir.

2005) (en banc) (citations omitted) (finding that it was not clearly established that a

particularized suspicion was a prerequisite to a warrantless search of a parolee's residence

provided there was probable cause to believe that he is a resident of the house to be

searched). Based on *Samson* and *Motley*, the Ninth Circuit later extended *Knights* by

upholding a warrantless search of a probationer's residence without reasonable suspicion:

> Because a suspicionless search of a parolee does not violate
> the Fourth Amendment, *Samson*, 547 U.S. at 850–56, 126

> S.Ct. 2193, and because our precedent dictates that "there is no
> constitutional difference between probation and parole for
> purposes of the fourth amendment," *Motley*, 432 F.3d at 1083
> n. 9, we must conclude that a suspicionless search of a
> probationer does not violate the Fourth Amendment.

*United States v. Baker*, 658 F.3d 1050, 1055-56 (9th Cir. 2011) (noting that it was bound

by Ninth Circuit precedent until "there is an intervening Supreme Court or en banc

decision that is clearly irreconcilable with our own precedent").

Here, Plaintiff's probation order contained a provision for warrantless searches. He

also signed the Community Corrections Agreement consenting to a search at any time and

at any place and waived his constitutional right to be free from such searches. The record

reflects that Plaintiff was well aware of the search condition. *Samson* and *Motley* were

decided before the challenged searches. Therefore, it would have not been clear to a

reasonable officer at the time of the searches that his conduct in searching without a

warrant was unlawful.[4] Indeed, the same case law establishes that there was no violation.

Even if reasonable suspicion had been required, however, Plaintiff cannot establish a

constitutional violation.

The July 2007 search was prompted by Officer Gardner's personal observation of

Plaintiff with a cup of beer in his hand, and Plaintiff tested positive for marijuana use. In

---

[4] There is a possibility that the Ninth Circuit or the Supreme Court may ultimately find that such searches, although constitutionally acceptable for parolees, are not acceptable for probationers. *See Baker*, 658 F.3d at 1058-59 (concurring opinion) (noting that "our own jurisprudence" ignored the constitutional difference between probationers and parolees recognized in *Samson*). However, the law at the time of the searches is determinative.

other words, Officer Gardner had more than a reasonable suspicion – he had actual knowledge – of a violation.

When Officer Gardner went to his home on a routine visit in March 2008, Plaintiff exhibited the same behavior he had on a prior visit in September 2006 – he did not answer the door immediately. Just as with the prior visit, when Plaintiff opened the door, he immediately advised Officer Gardner that he was in violation of his conditions of probation. Once he did so, Officer Gardner had more than reasonable suspicion of violations. Plaintiff has not met the first prong of the *Saucier* inquiry – he has not established that his Fourth Amendment rights were violated due to lack of a warrant or reasonable suspicion.

### (2)     Illegal Sentence

The only remaining basis for claiming that his Fourth Amendment rights were violated is the fact that the term of probation was two years longer than authorized by statute. The parties appear to disagree when a three-year term would have expired.[5] However, no matter which date is used, the two challenged searches were obviously beyond the legal term of probation.

Plaintiff has not provided, and the Court cannot find, any authority holding that Officer Gardner should have looked beyond the face of the judgment to determine

---

[5] In his Response, Plaintiff claims that the probationary sentence should have expired on April 29, 2006 although in his Complaint he alleged July 13, 2007. *Compl at 17.* Defendants claim that it would have expired on May 25, 2007. *Reply* at 2.

whether the sentence was illegal.[6]  The judgment unambiguously provided that the term of

probation was five years and that Plaintiff was subject to the conditions of probation until

the state court discharged him.  The state court did not do until August 19, 2008 when

Judge Shindurling advised the parties that the sentence was illegal.

A review of the record, including the depositions of Plaintiff and Officer Gardner,

reveals only a discussion about Plaintiff's belief that his probation was over and

discussions about seeking early termination if Plaintiff had no violations until August of

2007. *Gardner Depo*. at 40-41 (on July 26, 2006, Plaintiff "made the statement that he

thought he was off probation"); *Id*. at 42 (told Plaintiff he would request early discharge if

he stayed "problem free" until August of 2007).  Officer Gardner verified that the

judgment said five years and that Plaintiff had not been discharged.  *Gardner Depo*. at 40;

43.

Plaintiff did not raise the illegality of the sentence and apparently did not contact

the court or his attorney questioning the sentence.  *Mullenbach Depo*. at 15-16 (felt that it

was an "inordinate amount of time;" did not appeal; did not speak with probation officer

at the time); *id*. at 49 (spoke to his attorney but did not know if he ever raised the issue

_____

[6]  The IDOC Standard Operating Procedures of the Division of Community Corrections ("IDOC
Policy") details the applicable standards for supervision of offenders.  It reveals no requirement that a
probation officer, district manager, or supervisor of parolees and probationers examine the legality of the
court order.  *Elia Aff.,*Ex. 2. The IDOC Policy provides that "[p]robation and paroles officers (PPOs) are
responsible for practicing the guidelines, expectations, processes, and outcome measures of this SOP."
*Id*. at 2.  Those SOPs address expectations regarding supervision, case management, violation responses,
staffing cases with supervisors, supervisor case review and case audits, use of monthly reports,
documentation, and offender assessment.  *Id*.

before the court). He had several conversations with Officer Gardner about feeling that the length of probation was too long and that he was "off probation" because there had been an extended period of time without contact by probation. *Id*. at 18-19. Plaintiff had discussions with Officer Gardner about the fact that Gardner was going by the terms of the Order but that he would try to get early release or early discharge. *Id*. at 24-26. The first time Plaintiff heard the term of probation was longer than it should have been was August 2008 when he was so advised by Judge Shindurling. *Id*. at 38.

Citing *State v. Johnson*, 716 P.2d 1288, 1293-94 (Idaho 1986), Plaintiff contends that a probation officer is imputed with knowledge of the law. While *Johnson* states that general proposition, the examples cited relate to the execution of a probation officer's duties including such things as "the fact that (1) warrantless searches are *per se* unconstitutional, unless a specific exception to the rule exists, and (2) that a landlord's consent is insufficient to permit a government official to search the home of a renter/lessee." *Id*. There is no indication that a probation officer is imputed with knowledge that a particular sentence is illegal.

As to the claim that Defendants violated his Fourth Amendment rights by enforcing an illegal probation order, Plaintiff has failed to establish the second prong of the *Saucier* qualified immunity inquiry. Even if Plaintiff's constitutional rights were violated by enforcing conditions of probation beyond three years, there is no clearly established right to have a probation officer question the legality of the sentence imposed.

*Cf. Alston v. Read*, 663 F.3d 1094, 1099 (9th Cir. 2011) (finding qualified immunity where a prisoner made unsupported allegations that he was being overdetained because a prison official has no duty "to obtain a prisoner's court file where the institutional file appears complete, the sentence was appropriately recalculated under state law, and the prisoner has presented no evidence to the contrary").

Here, there was an outstanding order of probation for a term of five years. There was nothing on the face of the judgment indicating its illegality. It was reasonable for Officer Gardner to assume that he should be enforcing the order of probation since it had not been discharged. Like the prison officials in *Alston* who were unsuccessfully trying to correct the calculation of a prisoner's sentence, Officer Gardner took steps to verify the date and terms of the order of probation, to verify that it had not been discharged, and to attempt to work with Plaintiff to have his probation terminated early.

Officer Gardner acted reasonably in enforcing the conditions of probation. Defendants are entitled to qualified immunity on all of Plaintiff's Fourth Amendment claims. Therefore, those claims are subject to dismissal.

### B.  Fifth Amendment Claim

Plaintiff alleges in his Complaint that his Fifth Amendment due process rights were violated by his arrest, incarceration, and continued prosecution during the illegally extended sentence of probation. Defendants contend that Officer Gardner's actions were reasonable and that the government's interest in controlling crime far outweighed

Plaintiff's interests as a felon on probation. Plaintiff did not respond to this argument. Therefore, Defendants ask the Court to find that there is no issue of material fact and grant summary judgment on this issue.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972).

Here, Plaintiff appears to be contending that Officer Gardner deprived him of liberty without due process by enforcing the conditions of what was later determined to be an illegal sentence of probation. This is remarkably similar to a claim against prison officials in a recent Ninth Circuit case. *See Stein v. Ryan*, 662 F.3d 1114 (9th Cir. 2011). A detailed recitation of the facts, issues, and conclusions of law will illustrate the appropriateness of following *Stein*'s guidance.

Stein had been placed on lifetime probation following conviction on a felony charge of attempted sexual contact with a minor. He did not appeal his conviction or sentence. Nine years later, his probation was revoked, and he was sentenced to ten years in prison. He did not appeal his sentence although he ultimately filed a petition for post-conviction relief. Two years after the sentence on revocation was imposed, the Arizona

Supreme Court held that the maximum probationary period that could be imposed for his offense of conviction was five years. Stein was released a few months later after the superior court vacated his sentence and discharged him from probation. He had been incarcerated approximately three years pursuant to an illegal sentence.

Stein brought a § 1983 action against prison officials for failing to discover that his sentence was illegal and releasing him. He alleged violation of his Fourteenth Amendment right to due process on the theory that the prison officials deprived him of liberty without due process by imprisoning him pursuant to an illegal sentencing order. *Id*. at 1118.

In addressing Stein's due process claim, the court recognized that wrongful imprisonment may support a claim under § 1983, that the defendants imprisoned Stein under color of law, and that imprisonment violates a prisoner's Fourteenth Amendment rights if he does not first receive due process. *Id*. The court construed the plaintiff's claim as an assertion that he had "a constitutional right not to be incarcerated pursuant to a sentencing order if that order is later determined to be invalid." *Id.* at 1119.

Noting that states may deprive a person of liberty if the person first has an "opportunity to be heard at a meaningful time and in a meaningful manner," the court determined that Stein had "received all the process that was due to him." *Id*. (internal citations omitted). That process included several opportunities to be heard:

> Stein had an opportunity to be heard before he was convicted and placed on probation. He also could have appealed the

order that erroneously set the term of his probation for the rest of his life. He had another opportunity to be heard before the court sentenced him to ten years imprisonment. He then could have appealed that order. He was afforded the opportunity to seek post-conviction relief and ultimately secured his release. Stein did not allege that he was ever denied an opportunity to be heard at a meaningful time and in a meaningful manner.

*Id.*

Despite having had all those opportunities to be heard, Stein argued it was not sufficient. He stated that the prison officials should have reviewed his sentence *sua sponte* and determined its illegality. The court rejected that argument as well finding that he had not alleged any violation of his rights under the Fourteenth Amendment:

> Stein offers no authority requiring prison officials to review sentencing orders independently to make sure the court got it right. Prison officials may properly assume that they have the authority to execute the sentencing orders delivered to them by the court without fear of civil liability.

*Id.*

In closing, the court emphasized that the prison officials were required to honor the order of incarceration until it was vacated by the state court and were thus entitled to immunity:

> To say that defendants should have released Stein as soon as the Arizona Supreme Court decided *Peek* (or at any time prior to the court's order vacating sentence) would be to impose on them the judicial responsibility of reviewing the legality of a sentencing order. In other words, *Peek* may have given Stein the right to have his sentence vacated, but it was the vacatur of his sentence by the court hearing his case that gave him the right to be released. Even if *Peek* made it clear that Stein's

> sentence was erroneous, defendants did not violate his
> constitutional rights by holding him in prison while the
> sentencing order remained in force.

*Id*. at 1120.

Here, Plaintiff also had an opportunity to be heard at his revocation hearing (where he was represented by counsel), to appeal his sentence on revocation, or to seek post-conviction relief. However, he did not raise the issue at the revocation hearing or appeal or seek post-conviction relief. He did nothing other than express generalized opinions to Officer Gardner that his term of probation was too long. Furthermore, he admitted in his deposition that he did not know that the sentence exceeded the statutory maximum until Judge Shindurling discharged his probation for that reason. *Elia Aff., Ex. 9 at 38*. Neither did Judge Moss, the prosecutor, or defense counsel at the revocation hearing.

Just as Stein asserted that prison officials should have reviewed his sentence *sua sponte* and determined its illegality, Plaintiff here asserts that Officer Gardner should have known or should have verified that his sentence was legal. Just as Stein did not submit any authority that prison officials must independently review sentencing orders to "make sure the court got it right," Plaintiff here has not submitted any authority that probation officers must do so. Just as prison officials must enforce a sentencing order until it is vacated, probation officers must enforce a probation order until it is vacated. Just as Stein had the right to have his sentence vacated after *Peek*, Plaintiff here had the

right to have his sentence vacated once it was determined to be illegal. He was released and discharged from probation immediately. Until the discharge, however, Officer Gardner was required to continue supervising Plaintiff and enforcing the conditions of probation. Therefore, Plaintiff's Fifth Amendment claim is subject to dismissal.

### C. Eighth Amendment Claim

Plaintiff has raised an Eighth Amendment claim in his Complaint alleging that Officer Gardner's revealing that Plaintiff acted as a confidential informant for Mr. Hempel placed him in imminent danger. In his Response, he alleged that the extension of his probation was cruel and unusual punishment.

#### (1) Imminent Danger

To prevail on this Eighth Amendment claim, Plaintiff must show that he was at a substantial risk of serious harm and that Officer Gardner acted with deliberate indifference to that substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff must also show that Officer Gardner had a "sufficiently culpable state of mind." *Id*.

Officer Gardner testified at his deposition that he was not aware of anyone from probation and parole disclosing Plaintiff's identity as a confidential informant. *Elia Aff., Ex. 10 at 56.* Officer Gardner stated that when he interviewed Mr. Hempel at the start of his supervision, Mr. Hempel told *him* that Plaintiff was the confidential informant in his case. *Gardner Aff. ¶ 13*. Officer Gardner did not confirm the statement. *Id.* Likewise,

Mr. Hempel told the pre-sentence investigator, Brenda Hammon, prior to sentencing that Plaintiff was the confidential informant in his case. *Hammon Aff. ¶¶ 4-6.*

Plaintiff failed to address Defendants' argument in his Response or rebut Officer Gardner's and Brenda Hammons' factual assertions. Indeed, in his deposition, he testified that he had no direct information that Officer Gardner had identified him as a confidential informant. *Id.* at 44. He only theorized that if Officer Gardner had not done so, then one of the two Teton County Sheriff's deputies must have done so. *Id.* Plaintiff has also not shown that he was ever in imminent danger of harm or that Officer Gardner acted in disregard of a substantial risk of serious harm. Plaintiff admitted in his deposition that he was never threatened although he was concerned for his safety having heard that Mr. Hempel possibly made threats. *Mullenbach Dep. at 4.* Thus, Plaintiff has failed to state an Eighth Amendment claim regarding alleged disclosure as a confidential informant.

### (2)    Enforcing Probation Conditions

In his Response, Plaintiff alleged for the first time that the duration of his probation resulted in cruel and unusual punishment in violation of the Eighth Amendment. In their Reply to this new claim, Defendants contend that although Plaintiff's sentence was longer than allowed by Idaho statute, it was not so "grossly disproportionate" as to constitute an Eighth Amendment violation as required by *Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010). The Court need not address the issue of

whether proportionality is the appropriate test in this context.

In *Stein*, discussed above, the Ninth Circuit readily disposed of Stein's Eighth Amendment claim. *Stein*, 662 F.3d at 1119. There, the Ninth Circuit found that Stein's allegation that prison officials should have discovered that his sentence was illegal did not establish that they acted with deliberate indifference regarding his liberty interest. The court explained:

> Prison officials have the duty to execute the sentencing orders delivered by the courts. They may have a duty to calculate accurately the prisoner's release date according to the terms of the sentencing order, but no reasonable prison official would understand that executing a court order without investigating its potential illegality would violate the prisoner's right to be free from cruel and unusual punishment.

*Id*. at 1119-20.

Likewise, probation officers have the duty to execute the sentencing orders delivered by the courts. They may have a duty to supervise probationers according to the terms of the sentencing order and enforce the conditions of probation, but no reasonable probation officer would understand that executing the sentencing order without investigating its potential illegality would violate the Eighth Amendment. Therefore, this claim is likewise subject to dismissal.

### D. Equal Protection Claim

Plaintiff alleges that Officer Gardner violated his equal protection rights by failing to ensure that the information he received and acted upon was reasonable relative to the

search, seizure, detention, and violation of his civil rights.  Implicit in this claim is that

the probation officer singled him out for routine investigations and/or arrest while not

investigating similarly situated probationers.  He further alleges that if the discretionary

decisions by probation officers are grounded in prejudice, prejudice would constitute

denial of equal protection of the law.  Defendants contend that one claiming equal

protection violations must plead intentional unlawful discrimination or allege facts that

are at least susceptible of an inference of discriminatory intent.  Plaintiff did not address

the equal protection claim in his Response.  Therefore, Defendants urge the Court to

grant summary judgment in their favor on this claim.

The standard for prevailing on an equal protection claim is "a demanding one."

*United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003).  As the Ninth Circuit

recently explained:

> To prevail on a § 1983 equal protection claim under the
> "Fourteenth Amendment, a plaintiff must demonstrate that
> enforcement [*i.e.*, investigation and arrests] had a
> discriminatory effect and the police were motivated by a
> discriminatory purpose."  "To establish a discriminatory
> effect . . . , the claimant must show that similarly situated
> individuals . . . were not prosecuted."  "To show
> discriminatory purpose, a plaintiff must establish that the
> decisionmaker . . . selected or reaffirmed a particular course
> of action at least in part because of, not merely in spite of, its
> adverse effects upon an identifiable group."

*Lacey v. Maricopa County*, 649 F.3d 1118, 1134 (9th Cir. 2011) (citations omitted)

(finding that the plaintiffs failed to adequately plead that similarly situated individuals

were not prosecuted).

There is no evidence that Officer Gardner acted in a discriminatory fashion towards Plaintiff in continuing to supervise him. Officer Gardner was simply performing his supervisory duties pursuant to the court's order of probation. Plaintiff has not alleged that Officer Gardner was treating him any differently from any other probationer or that he was failing to perform routine searches on any other probationers.

In his deposition, Plaintiff testified that another probationer could speak to the fact that "they were constantly looking for ways to put me in jail and all the times I was incarcerated." *Mullenbach Dep. at 52*. Plaintiff also testified that Officer Gardner told him that Monte Conyers, the first supervising Probation Officer, had told him that "if things were ever slow and he needed someone to arrest, go see Mullenbach." *Mullenbach Dep. at 53*. Those unsubstantiated hearsay statements appear to be the basis of the equal protection claim. However, just as an affidavit based on information and belief will not defeat summary judgment, so also deposition testimony based on what is essentially information and belief will not defeat summary judgment. *See Taylor*, 880 F.2d at 1046 n.3 (affidavit must be made on personal knowledge to raise a triable issue). Accordingly, Plaintiff's equal protection claim is subject to dismissal.

## CONCLUSION

As stated above, Defendants are entitled to summary judgment on all claims raised

in their Motion.  Plaintiff also named "Does I through X, as probation officers and/or employees of the Idaho Department of Corrections, Probation and Parole."  Plaintiff stated he would seek leave to amend the Complaint to show their true names and capacities when they were ascertained.  *Compl. at 2, ¶ 8.*  He included the Doe defendants in his Fourth, Fifth, and Eight Amendment claims.  However, despite having engaged in discovery, Plaintiff has not amended the Complaint to identity any of the Doe defendants.  Unnamed defendants cannot be served.  Accordingly, all claims will be dismissed against Does I through X.

In his Response, Plaintiff attempted to raise the issues that (1) "Defendant Gardner was not properly trained or supervised by the Department of Parole and Probation and his supervisor Defendant Reinke as to the proper procedure for the search of Plaintiff's residence without valid consent;" and (2) "Defendant Gardner was not properly trained or supervised . . . . to review the terms of probation to determine whether or not the duration of Plaintiff's probation was invalid on its face and whether or not probation had not been terminated by operation of law prior to a series of warrantless searches."  *Response at ¶¶ 14, 15.*  However, he did not factually or legally support those claims.  Whether Plaintiff gave consent is irrelevant given the search condition, and a probation officer is not required to determine whether a sentence is illegal.  Therefore, the failure to train or supervise claims are irrelevant.  Accordingly, to the extent that they were raised in the Complaint, they are dismissed.  *See Compl. at ¶ 21.*

## RECOMMENDATION

Based upon the foregoing, and the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS that:**

1.     Defendants Brad Gardner and Brent Reinke's Motion for Summary Judgment (Dkt. 15) filed be **GRANTED** and that Plaintiff's Complaint be **DISMISSED** IN its entirety.

2.     Written objections to this Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: February 9, 2012



Honorable Mikel H. Williams
United States Magistrate Judge